IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>DONNA PRESZLER, )<br>)<br>Defendant. ) | Criminal Action No.<br>13-06010-01-CR-SJ-FJG |

**REPORT AND RECOMMENDATION
TO ACCEPT DEFENDANT'S GUILTY PLEA**

On February 13, 2014, I held a change-of-plea hearing after this case was referred to me by United States District Judge Fernando Gaitan, Jr. I find that defendant's plea was voluntary and therefore recommend that it be accepted.

*I.   BACKGROUND*

On January 28, 2014, a superseding indictment was returned charging defendant with 6 counts of wire fraud, in violation of 18 U.S.C. § 1343; 14 counts of engaging in monetary transactions in criminally derived property, in violation of 18 U.S.C. § 1957; and 1 count of filing a false tax return, in violation of 26 U.S.C. § 7206.

Judge Gaitan referred this case to me for conducting a change-of-plea hearing and issuing a report and recommendation on whether to accept the plea. On February 13, 2014, defendant appeared before me with her counsel, John Lynch. The government was represented by Assistant United States Attorney Jess

Michaelsen. The proceedings were recorded and a transcript of the hearing was filed on February 14, 2014.

## II. *AUTHORITY OF THE COURT*

The authority of federal magistrate judges to conduct proceedings is created and defined by the Magistrates Act, 28 U.S.C. § 636. Besides certain enumerated duties, the Act provides that a "magistrate may be assigned such additional duties as are not inconsistent with the Constitution and the laws of the United States." 28 U.S.C. § 636(b)(3).

The Eighth Circuit, following the reasoning of several other circuits, has held that magistrate judges may preside over allocutions and pleas in felony cases, so long as certain procedural safeguards are met. United States v. Torres, 258 F.3d 791, 795-96 (8th Cir. 2001); see also United States v. Dees, 125 F.3d 261 (5th Cir. 1997), United States v. Williams, 23 F.3d 629 (2d Cir. 1994). The reasoning applied by the appellate courts relies upon previous opinions by the United States Supreme Court that conducting jury *voir dire* falls within a magistrate judge's "additional duties" when the defendant has consented. United States v. Torres, 258 F.3d at 795 (citing Peretz v. United States, 501 U.S. 923 (1991), Gomez v. United States, 490 U.S. 858 (1989)).

In Peretz, the Supreme Court held that when a defendant consents to a magistrate judge's involvement in *voir dire*, he

2

waives any objection based on his right to have an Article III judge hear his felony case. 501 U.S. at 936. Moreover, the availability of *de novo* review by a district judge preserves the structural guarantees of Article III. <u>United States v. Torres</u>, 258 F.3d at 795. Applying the <u>Peretz</u> holding and the reasoning of <u>Williams</u>, the Eighth Circuit held that the acceptance of guilty pleas bears adequate relationship to duties already assigned by the Magistrates Act in that "[a]n allocution is an ordinary garden variety type of ministerial function that magistrate judges commonly perform on a regular basis." <u>Id.</u> Plea allocutions are substantially similar to evidentiary proceedings explicitly assigned by the Act. <u>Id.</u> at 796 (citing <u>United States v. Dees</u>, 125 F.3d at 265). Even if taking a guilty plea were considered to be of greater importance than those duties already assigned, the consent of the defendant saves the delegation. <u>Id.</u> "Consent is the key." <u>Id.</u> (quoting <u>United States v. Williams</u>, 23 F.3d at 633).

The <u>Torres</u> court also addressed the implications of such a delegation for Article III's case and controversy clause. <u>Id.</u> Because plea proceedings are submitted to the district court for approval, the court retains ultimate control over the proceedings and is not bound to accept a plea taken by a magistrate judge. <u>Id.</u> Moreover, the district court's *de novo* review of the plea proceedings contributes to the ministerial nature of the

3

magistrate judge's role. Id.

Based on the above, I find that, with the consent of the defendant, the district court may properly refer a felony case to a Magistrate Judge for conducting a change-of-plea hearing and issuing a report and recommendation on whether the plea should be accepted.

### III. *FINDINGS OF FACT*

1. On January 28, 2014, a superseding indictment was returned charging defendant with 6 counts of wire fraud, in violation of 18 U.S.C. § 1343; 14 counts of engaging in monetary transactions in criminally derived property, in violation of 18 U.S.C. § 1957; and 1 count of filing a false tax return, in violation of 26 U.S.C. § 7206. Defendant understood the charges in the information (Tr. at 13).

2. The statutory penalty for each count of wire fraud is not more than 20 years imprisonment, not more than $250,000 fine, not more than 3 years of supervised release, and a $100 mandatory special assessment. The statutory penalty for each count of engaging in monetary transactions in criminal derived property is not more than 10 years imprisonment, not more than $250,000 fine, not more than 3 years of supervised release, and a $100 mandatory special assessment. The statutory penalty for filing a false tax return is not more than 3 years imprisonment, not more than $100,000 fine, not more than 1 year of supervised release, and a

$100 mandatory special assessment. In addition, defendant faces the possibility of restitution and forfeiture (Tr. at 35-36, 38). Defendant understood the statutory penalties (Tr. at 13).

    3. Defendant was advised of and understood the following:

    a. That she has a right to a trial by jury of at least 12 individuals and that their verdict must be unanimous (Tr. at 13);

    b. That she has the right to assistance of counsel throughout the trial (Tr. at 13-14);

    c. That defendant is presumed innocent, and the government has the burden of coming forward to prove defendant's guilt beyond a reasonable doubt (Tr. at 14);

    d. That defendant's attorney would have the opportunity to cross examine the government witnesses (Tr. at 14);

    e. That defendant would have an opportunity to subpoena witnesses to testify on her behalf (Tr. at 15);

    f. That defendant would have an opportunity to testify on her own behalf, but that she would not be required to and the jury would be instructed that they could not draw an adverse inference if she chose not to testify (Tr. at 14-15); and

    g. That defendant would have an opportunity to appeal any conviction to the Eighth Circuit Court of Appeals (Tr.

at 15-16).

4. Defendant was informed and understood that by pleading guilty, she is giving up all of the rights described above (Tr. at 16).

5. Defendant was informed that during the change-of-plea proceeding, she would be placed under oath and questioned by counsel and the judge (Tr. at 16-17). Defendant was further informed that she must answer questions truthfully while under oath (Tr. at 17). Defendant stated that she understood (Tr. at 17).

6. Defense counsel had full access to the government's file and agreed that his review of the evidence and his independent investigation confirmed that the facts were as alleged by the government and that it is in the defendant's best interest to plead guilty (Tr. at 17).

7. The government made the following factual basis for the crimes to which defendant intends to plead guilty:

> Ms. Preszler was employed as an account manager at Burdg, Dunham & Associates. Through her employment she was able to set up direct deposits to her personal bank accounts that she had and held jointly with her husband and with others. As a result of those direct deposits that were made as part of her payroll direct deposits, and they were included under a column as essentially as an expense reimbursement and not as actual pay, therefore, there were no taxes withheld from that amount. Throughout the scheme when it began, the amounts increased. And Ms. Preszler towards the end was -- towards the end in that manner of the scheme, she took approximately $3.9 million from Burdg, Dunham & Associates in that manner. And in particular for Count Six, that pertains to one of the weekly ACH payroll transfers, direct

6

deposits to her accounts that occurred on June 13th of 2012. And at that time the amount of that fraudulent non-taxable pay or expense reimbursement was $35,000. These transfers were set up via ACH, download files which caused them to be uploaded to the Internet and resulted in a wire transfer of the uploads of these payroll download files.

(Tr. at 19-20).

8. Defendant was placed under oath (Tr. at 18) and admitted the following: As to count 6, defendant did knowingly cause to be transmitted in interstate commerce by means of wire communication certain signals, that is, weekly ACH payroll data files sent via wire transfers on the Internet from BDA in Hamilton, Missouri, to FreedomWare, LLC's computer servers in New York, to initiate and process false and fictitious weekly ACH payments from BDA's bank accounts to her personal bank accounts and others, on or about June 13, 2012, in the amount of $35,000.00. At the time defendant did this, she did it knowingly, and she knew that it was illegal (Tr. at 20-22).

As to count 20, on June 22, 2012, defendant initiated a wire transfer from Citizens Bank & Trust in the amount of $148,389.14 which represented a false and fictitious payment. She did this intentionally and she knew at the time that it was against the law (Tr. at 22-23).

As to count 21, for the tax years 2007 through 2012, defendant filed her federal income tax returns and failed to report the fraudulently obtained funds from BDA on her federal income tax returns submitted to the IRS for each of those years.

7

On or about February 19, 2013, in the Western District of Missouri, defendant was a resident of Chillicothe, and she did willfully filed with the Internal Revenue Service a Form 1040 for the year 2012, which was verified by written declaration that it was made under the penalty of perjury and was filed with the Director of IRS at the center in Kansas City, Missouri; and defendant then and there knew it was not true and correct as to every material matter, in that defendant then and there knew and believed that the return materially understated the income obtained by the defendant through embezzlement. In particular, defendant represented for 2012 her joint income with her husband was only $46,863.00, whereas, she then and there knew and believed their total income, including the embezzled funds, was actually $851,863.00. At the time she did this knowingly and she knew that it was illegal (Tr. at 24-25).

9. Defendant is familiar with the plea agreement, discussed it with her attorney, and understands it (Tr. at 25-26). In addition, I went over the entire plea agreement with defendant during the change-of-plea hearing (Tr. at 26-31).

10. No one has made any threats or promises in order to get defendant to plead guilty (Tr. at 31).

11. Defendant is satisfied with the advice and guidance she has received from Mr. Lynch (Tr. at 31). There is nothing he has done that defendant did not want him to do (Tr. at 32). There is

8

nothing he has failed to do that defendant wanted him to do (Tr. at 32).

12. Defendant is 60 years of age (Tr. at 32). She has a high school education (Tr. at 32). Defendant has no mental health or substance abuse issues (Tr. at 32-33). Defendant was not under the influence of any drug or alcohol during the change-of-plea hearing (Tr. at 33).

13. Defendant tendered a plea of guilty to counts 6, 20 and 21 of the superseding indictment (Tr. at 33).

## *IV. ELEMENTS OF THE CHARGED OFFENSES*

The essential elements of wire fraud are: (1) a scheme to defraud, (2) the use of interstate wires incident to the scheme, and (3) an intent to cause harm. United States v. Edelmann, 458 F.3d 791, 812 (8th Cir. 2006).

The essential elements of engaging in monetary transactions in criminally derived property are: (1) defendant knowingly engaged in a monetary transaction, (2) defendant knew that the property involved derived from specified unlawful activity, and (3) the property is of a value greater than $10,000. United States v. Pizano, 421 F.3d 707, 722 (8th Cir. 2005).

The essential elements of filing a false tax return are: (1) defendant did make and subscribe United States Joint Income Tax Returns which were incorrect as to a material matter, (2) the United States Joint Income Tax Returns subscribed to by the

9

defendant contained a written declaration that they were made under the penalty of perjury, (3) defendant did not believe the returns to be true and correct as to every material matter, and (4) defendant falsely subscribed to the returns wilfully with the specific intent to violate the law. <u>United States v. Brooksby</u>, 668 F.2d 1102 (9th Cir. 1982); Eighth Circuit Model Criminal Jury Instruction 6.26.7206.

### *V. CONCLUSION*

Based on the above, I make the following conclusions:

1. The district court may lawfully refer this case to a Magistrate Judge for issuance of a report and recommendation on whether defendant's guilty plea should be accepted.

2. Defendant knowingly and voluntarily pleaded guilty to conduct establishing every element of the crimes charged in counts 6, 20 and 21 of the superseding indictment.

Therefore, it is

RECOMMENDED that the court, after making an independent review of the record and the applicable law, enter an order accepting defendant's guilty plea and adjudging defendant guilty of the offenses charged in counts 6, 20 and 21 of the superseding indictment.

/s/ Robert E. Larsen
ROBERT E. LARSEN
United States Magistrate Judge

Kansas City, Missouri
February 14, 2014